## UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA

| | |
|---|---|
| **OWEN PARTRIDGE, 4724 McLauchlin Place, Courtenay BC, Canada V9N4B7,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO. _____** |
| **AMERICAN HOSPITAL MANAGEMENT COMPANY, LLC, 1629 K Street, N.W., Suite 300 Washington, D.C. 20006,** | |
| | **TRIAL BY JURY DEMANDED** |
| **AMERICAN HOSPITAL MANAGEMENT COMPANY, LMT, 1629 K Street, N.W., Suite 300 Washington, D.C. 20006, and** | |
| **RANDALL D. ARLETT, 141 Petunia Terrace SE, Leesburg, Virginia 20175,** | |
| **Defendants**. | |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff Owen Partridge ("Plaintiff"), by and through undersigned counsel, states the following for his complaint against American Hospital Management Company, LLC ("AMHC"), American Hospital Management Company, LMT ("LMT"), and Randall D. Arlett (together, the "Defendants").

## INTRODUCTION

This action arises out of the Defendants' failure to pay Plaintiff over $107,000 in wages he earned as their employee between December, 2015 and December, 2016. Plaintiff

seeks enforcement of two employment agreements, penalties, attorneys' fees, and prejudgment interest.

## PARTIES

1.      Plaintiff is citizen of British Columbia, Canada, residing at 4724 McLauchlin Place, Courtenay BC, Canada.

2.      Defendant American Hospital Management Company, LLC, is a corporation organized and existing pursuant to the laws of the District of Columbia, having its principal place of business at 1629 K Street, N.W., Suite 300 Washington, D.C. 20006.

3.      Defendant American Hospital Management Company, Lmt, is a wholly owned subsidiary corporation of AHMC, having its principal place of business at 1629 K Street, N.W., Suite 300 Washington, D.C. 20006.

4.      Upon information and belief, Defendants AHMC and LMT are alter egos of each other, and each is liable for the acts and omissions of the other.

5.      Defendant, Randall D. Arlett is the President, Chief Executive Officer & Managing Director of AMHC and LMT. He is a citizen of the Commonwealth of Virginia residing at 141 Petunia Terrace SE, Leesburg, Virginia 20175.

## JURISDICTION AND VENUE

6.      This Honorable Court has subject matter jurisdiction over the within action pursuant to 28 U.S.C. § 1332(b) because the Plaintiff is a citizen of a foreign state and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

7.      This Honorable Court has personal jurisdiction over AHMC pursuant to Fed. R. Civ. P. ("Rule") 4 and D.C. Code §§ 13-422 and 13-423, because AHMC it is organized

under the laws of the District of Columbia, maintains its principal place of business in the District of Columbia, transacted business in the District of Columbia out of which Plaintiff's claims arise, and committed the wrongful acts giving rise to this litigation within the District of Columbia.

8.      This Honorable Court has personal jurisdiction over LMT pursuant to Rule 4 and D.C. Code § 13-422 and 13-423, because it and maintains its principal place of business in the District of Columbia, transacted business in the District of Columbia out of which Plaintiff's claims arise, and committed the wrongful acts giving rise to this litigation within the District of Columbia.

9.      This Honorable Court has personal jurisdiction over Defendant Arlett pursuant to Rule 4 and D.C. Code §§ 13-422 and 13-423 because Arlett maintains his principal place of business in the District of Columbia, transacted business in the District of Columbia out of which Plaintiff's claims arise, and committed the wrongful acts giving rise to this litigation in the District of Columbia.

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

11.      AHMC provides hospital management services to its customers.

12.      LMT is, upon information and belief, a subsidiary the alter ego of AHMC.

13.      Defendants employed Plaintiff to manage a hospital facility in Tbilisi, Georgia.

14.      On December 5, 2015, Plaintiff and Defendants entered into, and fully executed, a written two-year Employment Agreement ("First Agreement") pursuant to which,

among other things, Defendants promised to pay Plaintiff $11,000 per month in salary until April 1, 2016, and then $11,500 for the remainder of the contract term. Arlett executed the First Agreement. See Exhibit A.

15.    At all relevant times, hereto, Arlett maintained operational control over LMT, AHMC, and Plaintiff.

16.    Arlett had the power to approve the hiring of Plaintiff.

17.    Arlett had the power to approve Plaintiff's rate and method of compensation.

18.    Arlett had access to Plaintiff's employment records.

19.    Defendants, and Arlett, had the power to directly and indirectly supervise Plaintiff's work.

20.    Arlett had control over all material aspects of LMT's and AHMC's business.

21.    Defendants at all times exercised and/or possessed operational control over the method and mode of Plaintiff's work, including the performance of services by Plaintiff on Defendants' behalf in Tbilisi, Georgia.

22.    Plaintiff performed each and every duty required of him, and fulfilled each and every condition to his receipt of payment, under the First Agreement.

23.    Defendants breached the First Agreement by failing to pay Plaintiff the wages he was promised; instead, Defendants made the following payments:

| SALARY DUE PLAINTIFF | PAYMENT RECEIVED |
|---|---|
| December 2015: $8,871 (*prorated*) | $0 |
| Jan. 2016: $11,000 | $0 |

| Feb. 2016: $11,000 | $9,162 |
| Mar. 2016: $11,000 | $3,991 |
| Apr. 2016: $11,500 | $21,419 *(over three payments)* |
| May 2016: $11,500 | $0 |
| June 2016: $11,500 | $0 |
| July 2016: $11,500 | $0 |
| August 2016: $12,051* | $5,405 |
| Sept. 2016: $13,385* | $0 |
| Oct. 2016: $12,051* | $5,000 |
| Nov. 2016: $12,051* | $0 |

*Includes reimbursement for  health insurance coverage per agreement among the parties.

24.     Defendants repeatedly coerced Plaintiff to refrain from enforcement action against them by promising to make up the missing payments and bring his wages current.

25.     After Plaintiff threatened to resign as a result of Defendants' failure to pay the wages due him, Plaintiff, AHMC and Arlett entered into a second agreement (the "Second Agreement") pursuant to which AHMC and Arlett made an "iron clad" promise to pay his wages and his benefits in consideration of Plaintiff's continuing to provide services on Defendants' behalf. See Exhibit B.

26.     By entering into the Second Agreement, AHMC and Arlett agreed to pay Plaintiff all of the wages he was then owed and to make all subsequent payments in the amounts and according to the schedule in the First Agreement.

27.     In reliance on AHMC's and Arlett's "iron clad" promise, Plaintiff remained employed by Defendants and refrained from initiating enforcement action against them.

28.     Plaintiff performed each and every duty required of him, and fulfilled each and every condition to his receipt of payment, under the Second Agreement.

29.     Defendants breached the Second Agreement and failed to pay Plaintiff the wages he was owed.

30.     Throughout the period between December 2015 and December 2016, Defendants repeatedly promised to pay Plaintiff the wages he had earned.

31.     Plaintiff reasonably relied on Defendants' repeated representations by continuing to provide services to Defendants and on Defendants' behalf in Tbilisi, Georgia.

32.     At all relevant times hereto, Defendants received payments from the facility in Tbilisi, Georgia on account of the services Plaintiff performed on Defendants' behalf.

33.     On information and belief, Arlett converted to his own use the funds received from the facility in Tbilisi, Georgia on account of the services Plaintiff performed on Defendants' behalf.

34.     By letter dated November 17, 2016, Plaintiff provided Defendants thirty days' notice of his intent to resign.

35.     Plaintiff's resignation became effective as of December 16, 2016.

36.     Pursuant to D.C. Code § 32-1303 Defendants were required to pay Plaintiff all of his accrued wages within seven (7) days of Plaintiff's last day of employment.

37.     To date, Defendants owe and have failed to pay Plaintiff wages and benefits totaling over $107,000.

## COUNT ONE
## BREACH OF CONTRACT

38.     Plaintiff re-alleges and incorporates herein by reference the allegations of Paragraphs 1-37.

39.     The Agreements are valid, enforceable contracts supported by good and valuable consideration.

40.     Plaintiff has fully performed each and every duty required of him by the Agreements and satisfied each and every condition to receiving payment under the Agreements.

41.     Defendants' acts and omissions as set forth herein constitute material breaches of the Agreement.

42.     Defendants failure to pay Plaintiff in excess of $107,000.00 is in material breach of the Agreements.

43.     As a direct, proximate, and foreseeable result of Defendants' breaches of the Agreements, Plaintiff has suffered, and will continue to suffer damages in excess of $107,000.000.

## COUNT TWO
## VIOLATION OF D.C. WAGE THEFT ACT

44.     Plaintiff re-alleges and incorporates herein by reference the allegations of Paragraphs 1-43.

45.     Defendants, and each of them, are employers pursuant to D.C. Code § 32-1301(1).

46.     Plaintiff is an employee pursuant to D.C. Code § 32-1301(2).

47.     The $107,000.00 Defendants, and each of them, owe to Plaintiff are "wages"

pursuant to D.C. Code § 32-1301(3).

48.     None of the wages due Plaintiff are subject to dispute

49.     Defendants, and each of them, have violated the D.C. Wage Theft Act by failing to timely pay Plaintiff wages due and owed to him.

50.      In addition to Plaintiff's unpaid wages, Defendants, and each of them, owe Plaintiff liquidated damages in the amount of $321,000, plus his reasonable attorneys' fees, costs, and such other legal or equitable relief pursuant to D.C. Code § 32-1308.

## COUNT THREE
## FRAUD

51.     Plaintiff re-alleges and incorporates herein by reference the allegations of paragraphs 1-50.

52.     Defendants entered into the Agreements without intending to perform; specifically, Defendants entered into the Agreements without any intention of paying Plaintiff the wages he was owed and was to earn.

53.     Defendants failed to disclose to Plaintiff their intention not to pay him his earned wages.

54.     The omitted facts were material, and Plaintiff reasonably relied on Defendants' omission.

55.     Had Plaintiff known Defendants did not intend to pay his wages in accordance with the Agreements Plaintiff would not have entered into the Agreements or performed services for Defendants and on Defendants' behalf.

56.     Had Plaintiff known Defendants did not intend to pay his wages, he would have commenced an enforcement action prior to his resignation.

57.     As a direct, proximate, and foreseeable result of Defendants' omission of material facts, Plaintiff has suffered, and will continue to suffer, damages in excess of $107,000.

## COUNT FOUR
## UNJUST ENRICHMENT

58.     Plaintiff re-alleges and incorporates herein by reference the allegations of paragraphs 1-58.

59.     Should either of the aforementioned agreements be deemed unenforceable, Plaintiff nevertheless is entitled to equitable relief from this Court.

60.     Plaintiff conferred substantial economic and other benefits on Defendants by performing the Agreements for which Defendants received payment for Plaintiff's services.

61.     Plaintiff expected and was entitled to receive compensation in return for conferring substantial economic and other benefits on Defendants.

62.     Defendants accepted the benefits Plaintiff conferred on them.

63.     It would be unconscionable for Defendants to retain the benefits conferred on them by Plaintiff without paying Plaintiff for his services.

64.     Accordingly, Defendants, and each of them, are liable to Plaintiff for the value of the services he performed and the benefits he conferred on Defendants, in an amount to be determined at trial in excess of $107,000.

## COUNT FIVE
## DECLARATORY JUDGMENT

65.     Plaintiff re-alleges and incorporates herein by reference the allegations of paragraphs 1-64.

66.     The First Agreement contains a non-competition clause, restricting Plaintiff's right to engage in any activity or business that is competitive with Defendants.

67.     Defendants breached the First Agreement.

68.     The non-competition clause is an unreasonable restraint on trade not related to any legitimate protectable interest of Defendants.

69.     The non-competition clause is not reasonably limited in scope, geography, or time period.

70.     Plaintiff will be irreparably harmed if the non-competition clause is enforced and he is barred from engaging in his chosen profession for any length of time.

71.     Enforcement of the non-competition clause would be contrary to the public interest and the balance of the equities requires that the non-competition clause be deemed unenforceable.

72.     Pursuant to 28 U.S.C. § 2201(a) the non-competition clause should be declared unenforceable and void *ab initio*.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, including the following:

A.     Compensatory damages in the amount of $107,000.000;

B.     Liquidated treble damages of $321,000 pursuant to D.C. Code § 32-1303(4);

C.     Attorneys' fees and litigation expenses pursuant to D.C. Code § 32-1308;

D.     Punitive damages in an amount to be determined by the jury;

E.     Prejudgment interest;

F.     A preliminary and permanent injunction enjoining Defendants from enforcing the non-competition clause in the First Agreement; and

G.      Such other relief as this Honorable Court deems just and proper.


February 7, 2017                              Respectfully submitted,

                                             **/s/ Steven M. Oster**
                                             Steven M. Oster
                                             David W. Lawler
                                             Cogent Law Group LLP
                                             1850 M Street, N.W., Suite 280
                                             Washington, DC 20036
                                             Phone: 202.596.5290
                                             Fax: 202.747.5862
                                             steve@osterlawfirm.com
                                             david@osterlawfirm.com

## EMPLOYMENT AGREEMENT

This **Employment Agreement** ("Agreement") is made as of December 5th, 2015 between **The American Hospital Management Company Lmt ("AHMC" or "Company"), a Antigua and Barbuda company,** and **Owen Partridge (Contractor)** for the length of two (2) years; the contract will begin on December 7th, 2015

**Engagement Summary:**

The Contractor is to fulfill the position of Project Manager/ Chief Executive Officer (Pre Operational) and is assigned to Tbilisi-American Hospital under contractual agreement for Outsourced Management with AHMC.

**Recitals:**

1.      AHMC desires the services of the Contractor, and is therefore willing to engage his services on the terms and conditions stated below.

2.      The Contractor desires to be employed by AHMC and is willing to do so on those terms and conditions.

3.      Now, therefore, in consideration of the above recitals and of the mutual promises and conditions in this Agreement, it is agreed as follows:

**Agreement:**

**1.  Duties and Responsibilities:**

Contractor will have the following duties and responsibilities for American Hospital Management Company in the position of Project Manager/ Chief Executive Officer (Pre Operational):

The AHMC Project Manager / CEO (Pre Operational) is assigned the on site management with operational responsibility for an institution under contractual agreement with AHMC in conjunction with the assigned Directors and other AHMC corporate staff. The Project Manager/ CEO (PO) will responsible for the institution for the opening. The Project Manager/ CEO (PO) administers, directs, and coordinates all operation and technical activities of the institution to carry out its objectives in the provision of healthcare, and the improvement of community health status in a financially appropriate way.  The Project Manager/ CEO (PO) assumes full operational responsibilities in conjunction with the assigned Directors and other AHMC corporate staff for the institution, including the execution of policy formulated by the Board of Directors in conjunction with AHMC, medical staff, and operational entities within the institution.

- Provides technical assistance to the design, engineering and construction teams as it relates to hospital operations, medical equipment, HIT and other operation and work flow issues.
- Responsible for the day-to-day operational preparation for the commissioning of the hospital
- Acts as an expert hospital resource for the designers, engineers and construction company of the hospital
- Organizes the functions of the responsible areas through appropriate, planning, implementation, communication, teamwork, and the delegation of duties.
- Organizes the functions of the responsible areas through appropriate, planning, implementation, communication, teamwork, and the delegation of duties.
- Act as operator representative for hospital construction activities.

- Refine and finalize equipment plan in conjunction with the ownership, consultants, lenders, and AHMC corporate staff, develop equipment and supply purchase specifications, and direct acquisition, installation, and training for all equipment purchases.
- Participate in development and submission of all lender-required documents and submissions. Ensure compliance with all lender stipulated construction and operational requirements.
- In conjunction with AHMC corporate staff, participate in the recruitment of AHMC hospital leadership staff.
- Direct recruitment of physicians and other hospital staff.
- Establishes formal means for accountability for those whom they have assigned duties.
- Develop and maintain a positive working relationship with financial consultant, architect, construction manage, and ownership group.
- Act as AHMC's local representative for all project startup activities.
- Develop and submit routine project progress reports
- Meets routinely with Ministry of Health Leadership and Staff to ensure the consistent delivery of appropriate, timely and effective coordination of medical care between The Hospital and the Ministry of Health for coordination of shared services and missions.
- Develops an understanding of the physician needs, attitudes, and objectives to blend those with the functions and strategic objectives of the Hospital
- Reviews and acts upon the reports of authorized inspecting and licensing agencies.
- Responsible for the Hospital meeting or exceeding established Joint Commission International Standards.
- Directs the Hospital in the Annual Budgeting and planning process.
- Participates or is represented in community, regional, and other hospital and professional associations.
- Able to recognize priorities and adjust work schedule accordingly. Guides, mentors, coaches, and develops skills and results of physicians, subordinate managers and staff.
- Prepares reports for and attends meeting with Board of Directors in conjunction with officers and consultants of AHMC.
- Other duties and assigned

**2.      Other Business Activities:**

During the term of this contract, the Contractor shall devote his work efforts exclusively to the performance of this Agreement and shall not, without AHMC's prior written consent, render to others services of any kind or compensation, or engage in any other business activity that would materially interfere with the performance of his duties under this Agreement. The Contractor cannot work directly for Sayali Group D/B/A American Hospital Tbilisi during this time.

**3.      Reasonable Time and Effort Required:**

During this Agreement, Contractor shall devote such time, interest, and effort to the performance of this Agreement as may be fair and reasonable.

**4.      Non-Competition During Agreement:**

During the Agreement term, the Contractor shall not, in any fashion participate or engage in any activity or other business competitive with AHMC.  In addition, the Contractor, while engaged by AHMC, shall not take any action without AHMC's prior written consent to establish, form, or become employed by a competing business on termination of employment by AHMC.  The Contractor's failure to comply with the provisions of the preceding sentence shall give AHMC the right (in addition to all other remedies AHMC may have) to

terminate any benefits or compensation that the Contractor may be otherwise entitled to following termination of this Agreement.

**5.    Place of Engagement:**

During the engagement term, the Contractor shall be based out of Tbilisi, Georgia. The Place of Engagement is subject to change over the term of this Agreement with mutual consent.

**6.    Indemnification By AHMC:**

AHMC shall, to the maximum extent permitted by law, and, if applicable, insurance coverage indemnify and hold the Contractor harmless against amounts actually and reasonably incurred in connection with any proceeding arising by reason of the Contractor's employment by AHMC with the exception of criminal matters, harassment, acts outside the scope of employment, and human rights abuse.

**7.    Other Responsibilities and Warranties of Contractor:**

✓ **Alcohol/Drug/Solvent Misuse:**   Contractor is responsible for conducting himself appropriately. Contractor is a representative of both AHMC and the client; any inappropriate behavior or Alcohol/Drug/Solvent use in the workplace may result in immediate termination.   Contractor acknowledges AHMC's zero tolerance policy for substance abuse.

✓ **Personal Appearance:**   Contractor is responsible for personal appearance and presentation. As a representative of AHMC and client, it is imperative that he present himself as a professional in the workplace and community.

✓ **Harassment/Discrimination:**   Harassment and discrimination based on applicable protected categories will not be tolerated.   AHMC will investigate any reports of such conduct and if substantiated as a violation of AHMC policy, the result may be termination.   Contractor acknowledges AHMC's zero tolerance policy for harassment and discrimination.

✓ **Confidentiality:**   Confidentiality is necessary both for AHMC and the client.   Information that is proprietary and confidential to AHMC cannot be shared with the client and information that is proprietary and confidential to the client cannot be shared with those outside of AHMC and the client. When the relationship between AHMC and Contractor ends for any reason, Contractor must return to AHMC all AHMC property, equipment, materials, and data (collectively "AHMC Property") in whatever form maintained or stored.   Contractor will be responsible for any expenses incurred by AHMC in retrieving AHMC Property.

**8.    Disciplinary Procedure:**

If Contractor fails to fulfill any of his assigned duties or responsibilities, AHMC may take appropriate action, including termination if, after written notification, such deficiencies are not cured by Contractor in 30 days.

**9.   Term for Performance and Termination Provisions:**

This Agreement is for two (2) years and is renewable for additional one-year periods with mutual written agreement of the parties.   Either party may terminate this Agreement on 30-days written notice to the other party without further obligation for pay or benefits under this Agreement.

a.    **Termination on Retirement:**

This Agreement shall be terminated by the Contractor's voluntary retirement, that retirement shall be effective on the last day of any fiscal year, provided that the effective date of retirement occurs after the Contractor's 60th birthday, and that the Contractor gives AHMC six months' prior written notice.

b.    **Termination on Disability:**

If, during the period of employment, the Contractor becomes unable due to mental or physical illness or injury to perform his duties under this Agreement in his normal and regular manner for a period of 90 consecutive days, this Agreement may then be terminated.   Contractor will provide the Company, on its request, medical documentation related to any mental or physical illness or injury or disability that affects job performance.

c.    **Termination on Death:**

If the Contractor dies during the period of employment, this Agreement shall then be terminated. In the event of death while employed by AHMC and deployed outside of the country of origin, the Contractors's remains will be repatriated back to the country of origin by AHMC.

d.    **Termination or Assignment on Merger:**

In the event of a merger where AHMC is not the surviving entity, or of a sale of all or substantially all of AHMC's assets, AHMC may, at its sole option (1) assign this Agreement and all rights and obligations under it to any business entity that succeeds to all or substantially all of AHMC's business through that merger or sale of assets, or (2) on at least 30 days' prior written notice to the Contractor, terminate this Agreement effective on the date of the merger or sale of assets.

e.    **Termination of Client Contract**

If a client terminates a management contract, Contractor will be terminated on the last day of the hospital contract. No severance pay will be provided and there will be no notification pay-out. Contractor will only be paid for the balance of their remaining vacation time.

10.    **Non-disclosure After Termination:**

Because of his contract with AHMC, the Contractor will have access to trade secrets and confidential information about AHMC, its products, its customers, and its methods of doing business.  In consideration of his access to this information, the Contractor agrees that for a period of five years after termination of his engagement, he will not disclose such trade secrets or confidential information.  Contractor is responsible for any costs or fees incurred by the Company in enforce this provision during the five-year period.

11.    **Payment:**

In consideration of Contractor's performance of these services, AHMC agrees to pay Contractor as follows: Initial monthly salary of USD $11,000. Salary will be increased to $11,500 on April 1st, 2016. There is the eligibility for annual increases of 0-5% contingent upon a satisfactory performance evaluation.
Housing and transportation will be provided for the Contractor by the client.

Health Insurance will be provided for the Contractor.

12.    **Vacation:**

Contractor will be allowed thirty (30) days paid personal vacation time every year during the term of this Agreement with prior approval by AHMC Corporate, with the consent of the client, and prior scheduling. Vacation is accrued on a monthly basis. AHMC will purchase 1 round trip ticket for the Contractor to return home per year.

No Contractor may take a vacation in the first three (3) months of employment contract.

**13.    Expenses:**

AHMC or client shall reimburse the Contractor for reasonable and properly documented business related expenses incurred in connection with the Contractor's performance of his duties including business visa expenses.

**14.    No Direct Employment – Contract After Termination:**

Contractor agrees not to work as an Contractor, independent contractor, or otherwise provide services for or to any AHMC clients for two (2) years after Contractor's employment with AHMC terminates, unless Contractor obtains prior written authorization from AHMC. Because AHMC will suffer substantial harm if Contractor engages in such conduct, AHMC may obtain injunctive relief, if available, for violation of this provisions as well as damages. Further, Contractor will be responsible for any costs, fees, or expenses incurred by AHMC in enforcing this provision.

**15.    Arbitration:**

Any controversy or claim arising out of or relating to this Agreement shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction. A demand for arbitration must be submitted within 90 days of the date the party demanding arbitration knew or should have known of the controversy or claim. Any statutory period of limitation that is longer than 90 days is waived. Any court interpreting this provision will apply the shortest allowable period of limitation. An arbitration hearing shall consist of three arbitrators, one to be chosen directly by each party at will, and the third arbitrator to be selected by the two arbitrators so chosen. Each party shall pay the fees of the arbitrator he selects and of his own attorneys, and the expenses of his witnesses and all other expenses connected with presenting his case. Other costs of the arbitration, including the cost of any record or transcripts of the arbitration, administrative fees, the fee of the third arbitrator, and all other fees and costs, shall be borne equally by the parties. Despite the forgoing, the arbitrators may assign to one party or the other any and all fees and costs as part of any arbitration award.

**16.    Entire Agreement:**

This Agreement contains the entire Agreement between the parties and supersedes all prior oral and written Agreements, understandings, commitments, and practices between the parties. The parties may only modify this agreement by a written document signed by both parties specifically stating the modifications.

**17.    Severability:**

If any provision of this Agreement is held invalid or unenforceable, the remainder of this Agreement shall nevertheless remain in full force and effect. If any provision is held invalid or unenforceable with respect to particular circumstances, it shall nevertheless remain in full force and effect in all other circumstances.

Reviewed and voluntarily executed by the parties as of the day and year first written above.

**Contractor:**                                    American Hospital Management Company

_____               _____

**Owen Partridge**                                 **Randall D. Arlett, President**

Date: _____                          Date: _12-7-15_

6

**EXHIBIT B TO COMPLAINT**          PAGE 1 OF 1



**AMERICAN HOSPITAL**
MANAGEMENT COMPANY
Global Hospital Solutions
www.ahmc.us.com

| | |
|---|---|
| **TO:** | Randall Arlett<br>President and CEO<br>American Hospital Management Company |
| **FROM:** | Owen Partridge<br>CEO<br>American Hospital Tbilisi (AHMC) |
| **REFERENCE:** | Proposal |
| **DATE:** | 10 August 2016 |

Over the last months there has been some confusion and a great deal of frustration about the benefits and pay in my agreement with AHMC.  It appears that a number of items have fallen through the cracks for a variety of reasons of which had an adverse impact on me. To avoid this in the future and ensure the best possible outcome with the fees being paid in a timely fashion, I propose that at the end of each month I submit to AHMC an invoice with the following items:

- Monthly Pay for the month in question (This will be in compliance with the fee structure in the employment agreement and reviewed annually as laid out).
- The payments be sent to my CIBC accounts USD and CAD.  I suggest a 50/50 split deposit between the USD and CAD accounts.
- AHMC has no requirement to convert the funds. If conversion is necessary, the conversion will be done at CIBC branch.
- Monthly Medical/Health Insurance fees (I will pay for the insurance up front and bill back to AHMC, thereby avoiding any lapse in coverage for me and risk to AHMC). To date I have no written confirmation that the CIGNA insurance has been paid nor reinstated.
- Monthly Authorized Expenses such as: (I will pay up front and bill back to AHMC) for authorized travel visa, annual flight, etc. For larger expenses such as AmCham, 4th of July and hosting event expenses will require further discussion and authorization.

In return I am looking for an iron clad assurance that payment will be monthly in accordance with the established AHMC time line for pay (15th of each month). I suggest that this commence with the initial invoice being sent 31st August 2016 with payment 15th September 2016 assuming the outstanding salary payments are not in arrears.

I believe this will assist in reducing risk, avoiding embarrassment and ensure financial obligations are up to date.

Regards,

Owen Partridge
CEO
American Hospital Tbilisi
opartridge@ahmc.us.com
+995 577 028885

APPROVED

Randall Arlett
AHMC CEO

American Hospital Management Company
CORPORATE
SEAL
1998
DISTRICT OF COLUMBIA

**USA** : 1050 Connecticut Ave NW, Suite 1000, Washington, D.C. 20036
**Tel:** +1 (202) 772 - 3367          **Fax:** +1 (202) 772 - 3101
**UAE** : Level 41, Emirates Towers, Sheikh Zayed Road, Dubai
**Tel:** +971 4 313 2708          **Fax:** +971 4 319 7474
info@ahmc.us.com                    www.ahmc.us.com

americanhmc