## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| OWEN PARTRIDGE, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 17-0248 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 7, 10, 15, 27 |
| | : | | |
| AMERICAN HOSPITAL MANAGEMENT | : | | |
| COMPANY, LLC, *et al.*, | : | | |
| | : | | |
| | : | | |
| Defendants. | : | | |

## <u>MEMORANDUM OPINION</u>

DENYING PLAINTIFF'S MOTION TO STRIKE; DENYING DEFENDANTS' MOTION TO DISMISS AND
TO COMPEL ARBITRATION; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT; GRANTING DEFENDANTS' COUNSEL'S MOTION TO WITHDRAW

## I. INTRODUCTION

Plaintiff Owen Partridge brought this action, which seeks to recover unpaid wages

against American Hospital Management Company, LLC ("LLC"); American Hospital

Management Company, LMT ("LMT"); and Randall D. Arlett, who is President, Chief

Executive Officer, and Managing Director of both corporations. Before this Court considered a

motion to dismiss and to compel arbitration filed by Defendants or reached the merits of Mr.

Partridge's claims, the parties entered into a settlement agreement, which the Court approved and

incorporated into a consent decree. Unfortunately, however, entry of the settlement agreement

and consent decree did not end this dispute. Several payment deadlines have passed but,

according to Mr. Partridge, no money has changed hands. Consequently, the Court has agreed to

revisit and rule on the parties' three pre-settlement motions: (1) Plaintiff's motion to strike an

errata sheet filed by Defendants, (2) Defendants' motion to dismiss and to compel arbitration,

and (3) Plaintiff's motion for summary judgment. Also before the Court is a motion by Defendants' counsel requesting permission to withdraw his representation. For the reasons explained below, the Court denies Plaintiff's motion to strike and denies Defendants' motion to dismiss and to compel arbitration. The Court grants Plaintiff's motion for summary judgment against Defendant LMT on the breach of contract count, but otherwise denies Plaintiff's motion. The Court also grants Defendants' counsel's motion to withdraw.

## II. BACKGROUND

Mr. Partridge initiated this action against his former employers—LLC, LMT, and Mr. Arlett—alleging that they have failed to pay him more than $107,000 in wages that he earned managing a hospital facility on their behalf in Tbilisi, Georgia. Compl. ¶¶ 13–14, 23, 37, ECF No. 2. In Count One of his Complaint, Mr. Partridge claims that Defendants breached two separate employment agreements (collectively "the Agreements")—a two-year agreement that he had entered with LMT in December 2015 ("First Agreement") and another agreement that he had entered with either LCC or both LLC and Mr. Arlett in or about August 2016 ("Second Agreement") which purported to ensure strict compliance with the terms of the First Agreement.[1] Id. ¶¶ 14, 23, 25–26, 29, 41–43. Mr. Partridge also contends that Defendants violated the District of Columbia Wage Payment and Collection Law by withholding wages (Count Two) and committed fraud by misrepresenting their intent to perform under the Agreements (Count Three).[2] Id. ¶¶ 44–57. In addition, Mr. Partridge seeks a judgment declaring that a non-

---

[1] Defendants dispute that the Second Agreement constitutes a separate, enforceable contract. *See* Defs.' Resp. to Pl.'s Mot. Summ. J. at 9–10, ECF No. 18.

[2] Mr. Partridge also advances unjust enrichment as an alternative theory of recovery (Count Four) should Counts One, Two, and Three fail. Compl. ¶¶ 58–64.

competition provision in the First Agreement is invalid as an unreasonable restraint on trade

(Count Five). *Id.* ¶¶ 65–72. The relevant provisions state:

> During the term of [the First Agreement], [Mr. Partridge] shall devote his work efforts exclusively to the performance of this Agreement and shall not, without [LMT's] prior written consent, render to others services of any kind for compensation, or engage in any other business activity that would materially interfere with the performance of his duties under this Agreement. [Mr. Partridge] cannot work directly for Sayali Group D/B/A American Hospital Tbilisi during this time.
>
> ………
>
> During the [First Agreement] term, [Mr. Partridge] shall not, in any fashion participate or engage in any activity or other business competitive with [LMT]. In addition, [Mr. Partridge], while engaged by [LMT] shall not take any action without [LMT's] prior written consent to establish, form, or become employed by a competing business on termination of employment by [LMT]. [Mr. Partridge's] failure to comply with the provisions of the preceding sentence shall give [LMT] the right (in addition to all other remedies [LMT] may have to terminate any benefits that [Mr. Partridge] may be otherwise entitled to following termination of this Agreement.

*Compl.*, Ex. A at 2–3, ECF No. 2.

"Defendants [LLC] and Randall Arlett" moved to dismiss the Complaint and to compel arbitration. *See* Mem. Supp. Defs.' Mot. Dismiss for Lack of Subject Matter Jurisdiction, to Compel Arbitration and Failure to State a Claim at 5–8 ("Defs.' Mot. Dismiss"), ECF No. 7. Counsel for Defendants later filed an errata sheet, which clarified that the motion to dismiss had been submitted on behalf of all three Defendants. *See* Defs.' Erratta [sic] Sheet to Its Mot. Dismiss ("Errata Sheet") at 1, ECF No. 14. The motion to dismiss pointed to an arbitration clause in the First Agreement, which states:

> Any controversy or claim arising out of or relating to this Agreement shall be settled by arbitration in accordance with the

> Commercial Arbitration Rules of the American Arbitration
> Association, and Judgment on the award rendered by the
> arbitrators may be entered in any court having jurisdiction. . . . An
> arbitration hearing shall consist of three arbitrators, one to be
> chosen directly by each party at will, and the third arbitrator to be
> selected by the two arbitrators so chosen. Each party shall pay the
> fees of the arbitrator he selects and of his own attorneys, and the
> expenses of his witnesses and all other expenses connected with
> presenting his case. Other costs of the arbitration, including the
> cost of any record or transcripts of the arbitration, administrative
> fees, the fees of the third arbitrator, and all other fees and costs,
> shall be borne equally by the parties. Despite the forgoing, the
> arbitrators may assign to one party or the other any and all fees and
> costs as part of any arbitration award.

Compl., Ex. A at 5, ECF No. 2. Defendants also asked the Court to dismiss any claims asserted

against Mr. Arlett as an individual, arguing that Mr. Arlett had not signed any agreement with

Mr. Partridge in his personal capacity and that no pleading justified piercing the corporate veil to

hold Mr. Arlett liable for any actions taken by LLC and LMT. Defs.' Mot. Dismiss at 4–5.

Soon after, Mr. Partridge asked the Court to strike counsel's errata sheet, arguing that

LMT had purposely declined to join the motion to dismiss and that an errata sheet could not be

used to join a motion to dismiss. *See* Mot. to Strike Errata Sheet ¶¶ 4–7, ECF No. 15. Mr.

Partridge also opposed Defendants' motion to dismiss and to compel arbitration and moved for

summary judgment on his claims. *See* Pl.'s Mem. in Opp'n to Mot. to Compel Arbitration and in

Support of Pl.'s Cross-Mot. Summ. J. ("Pl.'s Opp. Mot. Dismiss"), ECF No. 9; Cross-Motion for

Summ. J. ("Pl.'s MSJ"), ECF No. 10.

Before considering the pending motions—and at the request of the parties—this Court

referred the case for mediation so that the parties could explore the possibility of settlement. *See*

Order Referring Case to Magistrate Judge for Mediation, ECF No. 20; *see also* Rule 26(f) Report

and Joint Proposed Discovery Plan at 3, ECF No. 19 (requesting referral for mediation). While

settlement discussions were in progress, Defendants' counsel moved to withdraw his

representation, explaining that "Defendant has been unable to abide by the terms of its agreement with counsel." Counsel Mot. To Withdraw ¶ 1, ECF No. 27. Specifically, according to counsel, "Defendants have not fulfilled their obligation to communicate with Counsel." Defs.' Counsel Reply Pl.'s Resp. to Its Motion to Withdraw at 1, ECF No. 32. The "lack of communication has le[d] to a deteriorated attorney-client relationship," counsel claims. *Id.* at 1–2. Moreover, counsel asserts that Defendants have "outstanding legal bills in arrears." *Id.* at 2. Counsel maintains that his withdrawal can be accomplished with minimal prejudice. *Id.* at 3.

On July 10, 2017, with Defendants' counsel's withdrawal motion still under advisement, Mr. Partridge filed a motion with the Court, which supplied the parties' settlement agreement and asked the Court to incorporate its terms into a consent decree.[3] *See* Mot. to Enter Settlement Agreement, ECF No. 28. The settlement agreement—which, per its terms, became enforceable when Mr. Arlett signed it on June 19, 2017—specified that the Defendants would provide Mr. Partridge an initial payment of $50,000 by July 19, 2017. Consent Decree ¶¶ 1, 11, ECF No. 31. "Upon receipt of the Initial Payment," the parties would "release and covenant not to sue each other" and would "lodge a consent decree memorializing these terms and, except as necessary to enforce the decree, dismiss the litigation." *Id.* ¶¶ 4–5. Thereafter LLC and LMT would pay Mr. Partridge $10,000 each month until the initial and monthly payments totaled $150,000. *Id.* ¶ 2. If LLC and LMT failed to make a monthly payment on time and failed to cure the default within five calendar days, the agreement established that "the Court shall enter judgment against [the corporations] for the entire unpaid balance plus all costs of collection, including attorney's fees

---

[3] At that same time, Mr. Partridge's counsel sought sanctions against Mr. Arlett or Mr. Arlett's counsel or both for a purported discovery violation. *See* Mot. for Sanctions, ECF No. 29. The parties subsequently resolved the dispute, and Plaintiff's counsel withdrew the motion. *See* Pl.'s Notice of Withdrawal of His Motion for Sanctions (Dkt. 29), ECF No. 42.

pursuant to D.C. Code § 32-1308." *Id.* ¶ 6. The parties explicitly "consent[ed] to the continuing jurisdiction of the United States District Court for the District of Columbia unless and until Plaintiff receives Initial and Monthly Payments totaling $150,000." *Id.* ¶ 10. On July 12, 2017, this Court entered a consent decree, which fully incorporated the parties' settlement agreement. *See id.* That same day, the Court denied as moot Defendants' motion to dismiss and Plaintiff's motion for summary judgment. *See* Minute Order (July 12, 2017). Defendants' counsel's motion to withdraw remained under advisement.

A little more than a month later, Mr. Partridge moved for an order requiring Defendants to show cause why they should not be held in contempt for allegedly violating the consent decree. App. for a Rule to Show Cause Why Defs. Should Not Be Held in Contempt of Court, ECF No. 35. According to Mr. Partridge, "despite [Mr.] Arlett's representations that he would make payments, that he already had made payments, and that he would provide confirmation of payments," no payments—not even the initial payment of $50,000—have been made. *Id.* at 1 & ¶ 11. At the first of two status conferences held shortly after Mr. Partridge filed his show cause motion, the Court explained that it had viewed Defendants' payment of the initial $50,000 as a condition precedent to the parties' filing of the consent decree. Having heard for the first time through Plaintiff's show cause motion that no initial payment had been made, this Court thought it unwise to merely enforce the terms of the consent decree. Rather, the Court agreed to revisit the parties' pre-settlement motions.

The Court ordered Mr. Arlett to appear for a second status conference to be held the next month. *See* Order, ECF No. 36 ("[T]he parties, including individual Defendant Randall Arlett, shall appear for a status conference on September 19, 2017. . . ."). Mr. Arlett belatedly notified Plaintiff's counsel and this Court that he was "not able to appear today in person" because he

resides and works in Saudi Arabia. Letter from Randall Arlett ("Arlett Letter"), ECF No. 41 (time-stamped September 19, 2017 at 7:40 A.M.); *see also* Letter (Fax) from Steve Oster, ECF No. 39. In that same message, Mr. Arlett affirmed that Defendants "do not oppose" their counsel's motion to withdraw. Arlett Letter, ECF No. 41. He asked, however, for "a 30 day continuance to seek new counsel and allow the new counsel adequate time to prepare and respond in this matter." *Id.* He also represented that Defendants "have already started to seek new counsel and expect to have retained by the end of this week." *Id.* Although that representation was made on September 19, 2017, more than three months have elapsed without any new counsel entering an appearance on Defendants' behalf.

Presently before the Court are Mr. Partridge's motion to strike Defendants' errata sheet, Defendants' motion to dismiss, Mr. Partridge's motion to summary judgment, and Defendants' counsel's motion to withdraw from this case.

## III. ANALYSIS[4]

### A. Plaintiff's Motion to Strike is Denied

The Court first considers Mr. Partridge's motion to strike Defendants' counsel's errata sheet. *See* Mot. to Strike Errata Sheet, ECF No. 15. Mr. Partridge argues that the errata sheet, which clarified that Defendants' counsel had intended to submit the motion to dismiss on behalf

---

[4] The parties apparently agree that, except in considering arbitrability questions under the Federal Arbitration Act, this Court should assess the issues and claims presented in this case under District of Columbia law. *See, e.g.*, Defs.' Mot. Dismiss (analyzing issues of District of Columbia law); Pl.'s MSJ (arguing that District of Columbia law should apply and analyzing issues under District of Columbia law). As no party disputes the choice of substantive law, the Court will not belabor its choice-of-law analysis. *See Piedmont Resolution, LLC v. Johnston, Rivlin & Foley*, 999 F. Supp. 34, 39 (D.D.C. 1998) ("The parties have not raised any choice of law issues and, in their arguments in support of and in opposition to [the] motion for summary judgment, all parties have relied solely on District of Columbia law. Accordingly, the Court will resolve the motion under District of Columbia law.").

of all three defendants, is not the appropriate means through which to join a motion to dismiss. *See id.* at 1. "The use of errata sheets," he contends, "is restricted to correcting typographic, stenographic, or other inconsequential errors." *Id.* ¶ 1. Furthermore, he asserts that Defendants' counsel made a strategic decision to leave LMT off of the motion to dismiss. *See id.* ¶¶ 5–6. And he argues that "if permitted Plaintiff will be prejudiced by having already responded to a Motion that subsequently was substantively altered without leave of Court." *Id.* ¶ 7. The Court disagrees.

"The decision to grant or deny a motion to strike is vested in the trial judge's sound discretion." *Canady v. Erbe Elektromedizin GmbH*, 307 F. Supp. 2d 2, 7 (D.D.C. 2004). Courts generally disfavor such motions. *See Stabilisierungfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200, 201 (D.C. Cir. 1981) (per curiam). A court may, however, strike an untimely filing or decline to allow a party to supplement a filing when doing so promotes the fair and efficient administration of justice. *See Jackson v. Finnegan, Henderson, Farrabow, Garrett & Dunner*, 101 F.3d 145, 150–53 (D.C. Cir. 1996) (affirming district court's denial of motion to supplement summary judgment filings); *cf. Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 9 n.5 (D.D.C. 2007) (striking a surreply submitted without leave of court).

The Court concludes that, under the circumstances of this case, it would be imprudent to strike Defendants' counsel's errata sheet. True enough, errata sheets are typically—and, perhaps, appropriately—used only to correct inconsequential errors. And instead of filing an errata sheet, Defendants' counsel likely should have sought leave to amend his motion to dismiss or requested an extension to permit him to file a separate motion to dismiss on behalf of LMT. But it is difficult to gather why the styling of Defendants' counsel's filing should predominate

the Court's analysis. In all cases, the Court has substantial discretion to permit the filing. *See*

*Cohen v. Bd. of Trustees of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 479–80 (D.C. Cir.

2016) (describing the discretion afforded to district courts to determine whether to extend a

deadline even after the time to act has expired); *Canady*, 307 F. Supp. 2d at 7 (explaining that the

decision whether to grant a motion to strike is vested in the district court's discretion). The

Court is simply not persuaded that Defendants' counsel acted in bad faith in neglecting to

include LMT in the motion to dismiss. Nor is the Court convinced that Plaintiff has suffered

substantial prejudice due to the clarification. Mr. Partridge seemingly hopes that the Court will

strike counsel's errata sheet, find that LMT failed to timely answer the complaint, declare LMT

in default, and proceed toward a default judgment. As the Court explained in *Canady*, "[s]uch a

result . . . would contravene the established policies disfavoring motions to strike, and favoring

the resolution of cases on their merits." 307 F. Supp. 2d at 8 (citation omitted). Accordingly, the

Court denies Plaintiff's motion to strike.

### B. Defendants' Motion to Dismiss and to Compel Arbitration is Denied

The Court next considers Defendants' motion to dismiss and to compel arbitration. First,

Defendants argue that the Court should dismiss any claims asserted against Mr. Arlett in his

personal capacity under Federal Rule of Civil Procedure 12(b)(6). Defs.' Mot. Dismiss at 4–5.

Second, Defendants ask the Court to compel arbitration of claims asserted against LLC and LMT

pursuant to an arbitration clause in the First Agreement. *Id.* at 5–8. For the reasons set forth

below, the Court denies both requests.

### 1. The Court Denies Defendants' Motion to Dismiss Mr. Arlett as a Defendant

The Court begins with Individual Defendant Arlett's argument that the complaint fails to

allege facts sufficient to support liability against him on any claim. Given the liberal pleading

standard of Rule 12, the Court concludes that Mr. Partridge's allegations against Mr. Arlett are sufficient to survive a motion to dismiss.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To survive a 12(b)(6) motion, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Detailed factual allegations are not required, but the plaintiff must plead facts sufficient to "raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* When ruling on a Rule 12(b)(6) motion, "the Court may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002). The Court must construe the complaint liberally in the plaintiff's favor and grant the plaintiff the benefit of all reasonable inferences. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). The Court may not, however, accept inferences that are "unsupported by the facts set out in the complaint," and may need not "accept legal conclusions cast in the form of factual allegations." *Id.*

### i. Plaintiff's Allegations Are Sufficient to Support a Plausible Inference That Defendant Arlett is An Alter Ego of LLC and LMT and Thus Personally Liable for Their Contractual Obligations

Count One of the complaint alleges that the Defendants—including Mr. Arlett—owe Mr. Partridge $107,000 for breaching two employment agreements. *See* Compl. ¶¶ 39–43. Defendants argue that Mr. Arlett is not liable for such a claim because he did not personally enter either agreement at issue in this case; rather, Mr. Arlett signed the Agreements as an officer of

LLC and LMT. *See* Defs.' Mot. Dismiss at 4–5. Defendants contend that there is no pleading that justifies piercing the corporate veil to hold Mr. Arlett personally liable for the contractual obligations of LLC and LMT. *See id.* Again, the Court disagrees.

"A corporation is ordinarily to be viewed as a distinct entity, even when it is wholly owned by a single individual." *Quinn v. Butz*, 510 F.2d 743, 757 (D.C. Cir. 1975) (footnote omitted). "This concept, however, is designed to serve normal, inoffensive uses of the corporate device, and is not to be stretched beyond its reason and policy." *Id.* "In breach of contract actions, piercing the corporate veil allows individual corporate owners [and officers] to be held liable for breaching contracts between their corporations and third parties, even though they were not personally in privity with the third parties." *World Class Constr. Mgmt. Grp. v. Baylor*, 962 F. Supp. 2d 296, 300 n.5 (D.D.C. 2013); *see also, e.g.*, *McWilliams Ballard, Inc. v. Level 2 Dev.*, 697 F. Supp. 2d 101, 105–06 (D.D.C. 2010) (concluding that breach of contract claims asserted against corporate officers in their personal capacity survived a motion to dismiss where plaintiff alleged sufficient facts to support the piercing of the corporate veil); *McWilliams Ballard, Inc. v. Broadway Mgmt. Co.*, 636 F. Supp. 2d 1, 7–8 (D.D.C. 2009) (same).

District of Columbia law provides that "a party may be permitted to pierce the corporate veil upon proof, 'that there is (1) unity of ownership and interest, and (2) use of the corporate form to perpetrate fraud or wrong,' or 'other considerations of justice and equity' justify it." *Broadway Mgmt. Co.*, 636 F. Supp. 2d at 8 (quoting *Estate of Raleigh v. Mitchell*, 947 A.2d 464, 470 (D.C. 2008)). "Individuals or other entities may be held liable for the activities of a corporation when it is demonstrated that 'the corporation is not only controlled by those persons who are alleged alter egos of the corporation, but also that the separateness of the persons and the corporation has ceased and . . . an adherence to the fiction of the separate existence of the

corporation would sanction a fraud or promote injustice.'" *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 90 F. Supp. 2d 15, 23 (D.D.C. 2000) (quoting *Camacho v. 1440 Rhode Island Ave. Corp.*, 620 A.2d 242, 249 (D.C. 1993)).

Courts also consider such factors as, "(1) whether corporate formalities have been disregarded, (2) whether corporate funds and assets have been extensively intermingled with personal assets, (3) inadequate initial capitalization, and (4) fraudulent use of the corporation to protect personal business from the claims of creditors." *Broadway Mgmt. Co.*, 636 F. Supp. 2d at 8 (quoting *Estate of Raleigh*, 947 A.2d at 470–71). The District of Columbia Court of Appeals has explained that the inquiry is flexible; "since piercing the corporate veil is a doctrine of equity, 'the factor which predominates will vary in each case.'" *Camacho*, 620 A.2d at 249 (quoting *Vuitch v. Furr*, 482 A.2d 811, 816 (D.C. 1984)); *see also Lawlor v. District of Columbia*, 758 A.2d 964, 975 (D.C. 2000) ("No single factor is dispositive, and 'considerations of justice and equity may justify piercing the corporate veil.'" (quoting *Bingham v. Goldberg, Marchesano, Kohlman, Inc.*, 637 A.2d 81, 93 (D.C. 1994))). Furthermore, courts stress that at the pleading stage a plaintiff need only allege sufficient facts to support a plausible inference of alter ego liability and need not show all that would be required to prevail at trial. *See Broadway Mgmt. Co.*, 636 F. Supp. at 8; *Lopes v. JetsetDC, LLC*, 994 F. Supp. 2d 135, 147 (D.D.C. 2014).

Plaintiff claims that Defendant Arlett "maintained operational control over LMT, [LLC], and Plaintiff"; had the power to approve the hiring of Plaintiff; had the power to approve Plaintiff's rate and method of compensation; had the power to directly and indirectly supervise Plaintiff's work; and had "control over all material aspects of LMT's and [LLC]'s business." Compl. ¶¶ 15–17, 19–21. Plaintiff also asserts that Defendant Arlett "converted to his own use the funds received from the facility in Tbilisi, Georgia on account of the services Plaintiff

performed on Defendants' behalf." *Id.* ¶ 33. These allegations amount to quite a bit more than the sparse or conclusory statements regarding the piercing of the corporate veil that courts have rejected as insufficient to survive a motion to dismiss. *See, e.g.*, *Kelleher v. Dream Catcher, L.L.C.*, 221 F. Supp. 3d 157, 160 (D.D.C. 2016) (dismissing action asserted against owners of a corporation where the only fact to support alter ego theory was that the corporation and the individual defendant-owners shared the same address); *Motir Servs., Inc. v. Ekwuno*, 191 F. Supp. 3d 98, 109–11 (D.D.C. 2016) (dismissing action against sole owner of a corporation where plaintiff relied only on the conclusory allegation that the corporation served as an alter ego for the individual defendant); *Ruffin v. New Destination, LLC*, 773 F. Supp. 2d 34, 40–41 (D.D.C. 2011) (dismissing action against individual owner/corporate officer where plaintiff's only allegations pertaining to that individual concerned her ownership of the corporation and status as an officer). Rather, taking Mr. Partridge's allegations as true and drawing all reasonable inferences in his favor, as the Court must at the motion to dismiss stage, these amount to, at least, assertions that Mr. Arlett excessively intermingled corporate funds with his personal assets and dominated and controlled the corporations in a manner that might amount to unity of interest and ownership. Allegations of this sort have been deemed sufficient in past cases. *See, e.g.*, *Broadway Mgmt. Co.*, 636 F. Supp. 2d at 9 (deeming allegations that individual defendants dominated a corporation, disregarded corporate formalities, commingled corporate and personal assets sufficient to survive a motion to dismiss). The fact that the First and Second Agreement were entered into by different corporate entities at Mr. Arlett's direction seems to support this conclusion. The Court concludes that Mr. Partridge has sufficiently stated a claim for piercing the corporate veil, thus it will deny Defendants' motion to dismiss this count.

**ii. Plaintiff States a Claim Against Defendant Arlett as an Employer Under the DCWPCL**

Mr. Partridge's second cause of action is for violation of the D.C. Wage Payment and Collection Law ("DCWPCL"), D.C. Code §§ 32–1301 *et seq.* At the time Mr. Partridge initiated this suit, the DCWPCL provided that "[e]very employer shall pay all wages earned to his employees at least twice during each calendar month, on regular paydays designated in advance by the employer."[5] D.C. Code § 32–1302. Mr. Arlett apparently seeks dismissal of this count on the basis that he was a mere corporate officer and not Mr. Partridge's "employer" under the DCWPCL. *See* Defs.' Mot. Dismiss at 5.

The DCWPCL defines employer as "every individual, partnership, firm, general contractor, subcontractor, association, corporation, the legal representative of a deceased individual, or the receiver, trustee, or successor of an individual, firm, partnership, general contractor, subcontractor, association, or corporation, employing any person in the District of Columbia." D.C. Code § 32–1301. This Court has explained that the definition of employer is to be broadly construed, that an employee may have more than one employer under the law, and that, in some circumstances, corporate officers are employers under the statute. *See Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 1, 5–6 (D.D.C. 2010) (defining "employer" under the Federal Labor Standards Act and noting that the DCWPCL is construed consistently with that Act). To determine whether an individual or entity is an employer under the law, courts apply an "economic reality test," under which they consider "the totality of the circumstances of the relationship between the plaintiff/employee and defendant/employer to determine whether the putative employer has the power to hire and fire, supervise and control work schedules or

---

[5] The DCWPCL has since been amended. *See* Wage Theft Prevention Clarification and Overtime Fairness Amendment Act of 2016, D.C. Law 21-266 § 2(b), 64 DCR 2140.

conditions of employment, determine rate and method of pay, and maintain employment records." *Id.* (quoting *Del Villar v. Flynn Architectural Finishes*, 664 F. Supp. 2d 94, 96 (D.D.C. 2009)). Stated otherwise, courts look to whether a corporate officer has operational control over the corporation. *Id.*

As the Court described in detail above, Mr. Partridge claims that Mr. Arlett "maintained operational control over LMT, [LLC], and Plaintiff"; had the power to approve the hiring of Plaintiff; had the power to approve Plaintiff's rate and method of compensation; had the power to directly and indirectly supervise Plaintiff's work; and had "control over all material aspects of LMT's and [LLC]'s business." Compl. ¶¶ 15–17, 19–21. These allegations amount to a claim that Mr. Arlett had operational control over the corporations and, thus, these allegations are sufficient at the pleading stage to show that Mr. Arlett may be Mr. Partridge's "employer" under the DCWPCL. Consequently, the Defendants' motion to dismiss Count Two is denied.

### iii. Defendant Arlett Can Be Held Liable for His Own Tortious Conduct

In addition to breach of contract and District of Columbia statutory claims, Mr. Partridge asserts that all three Defendants committed fraud by entering into the Agreements without intending to perform. Compl. ¶¶ 51–57. Mr. Arlett seeks dismissal of this count on the sole basis that he is not personally liable for the actions of the corporations. *See* Defs.' Mot. Dismiss. at 4–5. Mr. Arlett neglects to appreciate, however, that under District of Columbia law, "corporate officers 'are personally liable for torts which they commit, participate in, or inspire, even though the acts are performed in the name of the corporation.'" *Perry ex rel. Perry v. Frederick Inv. Corp.*, 509 F. Supp. 2d 11, 18 (D.D.C. 2007) (quoting *Lawlor*, 758 A.2d at 974). Importantly though, "an officer's liability is not based merely on the officer's position in the corporation; it is based on the officer's behavior and whether that behavior indicates that the

tortious conduct was done within the officer's area of affirmative official responsibility and with the officer's consent or approval." *Id.* (quoting *Lawlor*, 758 A.2d at 977). "Liability must be premised upon a corporate officer's meaningful participation in the wrongful acts." *Id.* (quoting *Lawlor*, 758 A.2d at 977). "Sufficient participation can exist when there is an act or omission by the officer which logically leads to the inference that he had a share in the wrongful acts of the corporation which constitute the offense." *Lawlor*, 758 A.2d at 975 (quoting *Vuitch*, 482 A.2d at 821).

The Court must determine whether Mr. Partridge's allegations are sufficient to sustain a claim that Mr. Arlett meaningfully participated in the acts and omissions on which the fraud claim is based or, alternatively, failed to act to prevent those acts or omissions despite an affirmative responsibility to do so.[6] The complaint asserts that the Defendants—including Mr. Arlett—entered into the Agreements without intending to pay Mr. Partridge the wages he would earn. Compl. ¶¶ 52–53. It also alleges that the Defendants—including Mr. Arlett—"failed to disclose to Plaintiff their intention not to pay him his earned wages." *Id.* ¶ 53. And, as explained above, Plaintiff claims that Mr. Arlett asserted "control over all material aspects of LMT's and [LLC's] business" and that he "had the power to approve Plaintiff's rate and method of compensation." Compl. ¶¶ 17, 20. Indeed, Mr. Arlett signed both agreements. *See* Compl., Ex. A at 6; Compl., Ex. B. To the extent a fraud occurred, the Court can draw the reasonable inference from Mr. Partridge's pleading that Mr. Arlett meaningfully participated in it. *Cf. Cooper v. First Gov't Mortg. & Inv'rs Corp.*, 206 F. Supp. 2d 33, 36 (D.D.C. 2002) (denying motion to dismiss claims against corporate officer-defendant and noting that "[a]lthough

---

[6] Because Defendants have not sought dismissal on any other basis, the Court declines to consider whether Plaintiff's allegations are otherwise sufficient to state a claim for fraud.

[plaintiffs] have not *proven* [defendant's] involvement in the alleged violations, the plaintiffs are entitled to offer evidence at a later time to support these claims"). Accordingly, Defendants' motion to dismiss is denied.

## 2. Defendants LMT and LLC Forfeited Their Right to Compel Arbitration By Actively Participating in this Litigation

Having rejected Defendants' contention that Mr. Arlett should be dismissed from this matter, the Court next considers Defendants' remaining arguments for dismissal. Citing a provision in the First Agreement, Defendants move to compel arbitration of claims asserted against LMT and LLC pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.* *See* Defs.' Mot. Dismiss at 5–8. Mr. Partridge resists arbitration, arguing that (1) the Second Agreement features no arbitration clause and thus claims stemming from that Agreement should not be subject to arbitration; (2) Defendants waived their right to compel arbitration by asking the Court to dismiss Mr. Arlett as a defendant in this matter; and (3) the Court should decline to enforce the arbitration provision in the First Agreement because it imposes prohibitive fees on Plaintiff.[7] *See* Pl.'s Opp. Mot. Dismiss at 12–19. The Court concludes that Defendants waived any right to compel arbitration by actively participating in this litigation.

The FAA provides that most written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a dispute is referable to arbitration, a district court "shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."

---

[7] Plaintiff also argues that LMT failed to appear or answer in this matter and that the other Defendants cannot enforce the arbitration clause in an agreement to which they were not parties. *See* Pl.'s Opp. Mot. Dismiss at 13. As the Court has declined to strike the errata sheet that clarified that the motion dismiss had been submitted on LMT's behalf, the Court need not address this argument.

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Generally, a party seeking to compel arbitration must show that a valid arbitration clause exists, that the movant is entitled to invoke the clause, that the other party is bound by the clause, and that the clause covers the asserted dispute. *See PCH Mutual Ins. Co. v. Casualty & Surety, Inc.*, 750 F. Supp. 2d 125, 141–42 (D.D.C. 2010). Because the FAA "strongly favors the enforcement of agreements to arbitrate as a means of securing 'prompt, economical and adequate solution of controversies,'" *Rodriguez de Quijas v. Shearson/Am. Express Inc.*, 490 U.S. 477, 479–80 (1989) (quoting *Wilko v. Swan*, 346 U.S. 427, 438 (1953)), the Supreme Court has instructed courts to resolve doubts in favor of arbitrability. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("[A]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." (internal quotation marks and notations omitted)).

Federal policy notwithstanding, a party opposing arbitration can set out defenses to arbitrability such as waiver and delay.[8] *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25. Our Circuit Court has explained that "consistent with arbitration's contractual basis, a party may waive its right to arbitration by acting 'inconsistently with the arbitration right.'" *Khan v. Parsons Global Servs., Ltd.*, 521 F.3d 421, 424–25 (D.C. Cir. 2008) (quoting *Nat'l Found. for*

---

[8] As the D.C. Circuit explained in *Zuckerman Spaeder, LLP v. Auffenberg*, 646 F.3d 919 (D.C. Cir. 2011), forfeiture—"the 'failure to make a timely assertion of a right," *id.* at 922 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993))—is the appropriate standard for evaluating a late-filed motion under Section 3 of the FAA. *Id.* The waiver standard, on the other hand, applies when a party intentionally relinquishes or abandons a known right. *Zuckerman*, 646 F.3d at 922 (citing *Olano*, 507 U.S. at 733). In the arbitration context, the waiver inquiry examines whether, during the course of litigation, a party "acted in a manner 'inconsistent with any intent to assert the right to arbitrate.'" *Zuckerman*, 646 F.3d at 922 (quoting *Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 775 (1987)).

*Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C. Cir. 1987)). Courts in this jurisdiction consider "the totality of the circumstances in deciding whether the defaulting party has acted inconsistently with the right. . . . One example of such conduct . . . is active participation in a lawsuit." *Khan*, 521 F.3d at 425 (quoting *Nat'l Found. for Cancer Research*, 821 F.2d at 774–75 (alterations in original) (brackets omitted)). This inquiry is "inherently fact-bound." *Zuckerman Spaeder, LLP v. Auffenberg*, 646 F.3d 919, 922 (D.C. Cir. 2011). Courts assess, among other things, whether a party timely sought arbitration; whether the party now moving for arbitration engaged in litigation activity that induced the other party and "the district court to expend time and effort on disputes, the resolution of which would not" move the dispute toward arbitration; and whether the party opposing arbitration would suffer prejudice from the movant's delay in seeking arbitration. *See id.* at 922–24. Prejudice is not necessary to demonstrate waiver. *Nat'l Found. for Cancer Research*, 821 F.2d at 777.

Not all participation in litigation is treated equally. For example, courts in this jurisdiction do not fault parties for seeking to compel arbitration in an answer that also asserts counterclaims and defenses. *See, e.g.*, *Gordon-Maizel Constr. Co., Inc. v. Leroy Prods., Inc.*, 658 F. Supp. 528, 531 (D.D.C. 1987) ("The mere fact that [defendants] answered the complaint, rather than risk a default judgment, in no way constitutes the degree of 'active participation' in litigation necessary to establish waiver."). Nor do they fault "merely removing [an] action [to federal court], without attempting to engage in discovery or to dispute plaintiff's claims on the merits." *Martin v. Citibank, Inc.*, 567 F. Supp. 2d 36, 41 (D.D.C. 2008). Likewise, a party's refusal to settle a matter informally—rather than through either litigation or arbitration—is not regarded as intrinsically inconsistent with the right to arbitration such that it constitutes waiver. *See Shorts v. Parson Trans. Grp., Inc.*, 679 F. Supp. 2d 63, 67 (D.D.C. 2010) (finding that a

party who refused attempts to engage in informal dialogue concerning an employment dispute did not waive the right to compel arbitration). Furthermore, in some cases, parties have even initiated litigation without being found to have waived the right to compel arbitration. *See Davis Corp. v. Interior Steel Equip Co.*, 669 F. Supp. 32, 33–34 (D.D.C. 1987) (concluding that subcontractor who filed an action in federal court to protect against the running of a statute of limitations and conducted minimal discovery did not waive arbitration because it "*consistently* maintained that the dispute should be submitted to arbitration").

Conversely, courts have deemed the right to compel arbitration waived where "[t]he litigation machinery had been substantially invoked and the parties were well into the preparation of the lawsuit by the time . . . an intention to arbitrate was communicated." *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir. 1966) (party had waived arbitration by moving for a transfer of venue; filing an answer to the complaint and a counterclaim; and filing notice of depositions, taking a deposition, and procuring documents and records in discovery); *see also, e.g.*, *Khan*, 521 F.3d at 428 ("[I]rrespective of other indicators of involvement in litigation, filing a motion for summary judgment based on matters outside the pleadings is inconsistent with preserving the right to compel arbitration" even when the summary judgment is accompanied by a motion to compel arbitration in the alternative). The right is likewise waived when a party has "made a conscious decision to exploit the benefits of pretrial discovery[,] motion practice," and other aspects of litigation and now seeks "a second bite at the very questions presented to the court for disposition." *Nat'l Found. for Cancer Research*, 821 F.2d at 288.

Considering the totality of circumstances here, the Court has no difficulty concluding that Defendants have waived any right to compel arbitration by actively participating in this

litigation. Though Defendants timely invoked the right to arbitrate in their earliest filings in this matter, their subsequent conduct cannot possibly be squared with an intent to preserve that right. Namely, after Defendants filed their motion to compel arbitration and their response in opposition to Plaintiff's request for summary judgment, they consented to the filing of a settlement agreement for entry by this Court as a consent decree. In that agreement, the parties claimed to have resolved matters that would otherwise be heard through arbitration. And, most tellingly, Defendants "consent[ed] to the continuing jurisdiction of the United States District Court for the District of Columbia unless and until Plaintiff received Initial and Monthly Payments totaling $150,000." Consent Decree, ¶ 10. If Defendants had wanted to maintain the right to pursue arbitration, they needed only wait for the Court to rule on their motion to dismiss and to compel arbitration. Moreover, they could have reached an out-of-court settlement which did not subject them to this Court's jurisdiction. Instead, by their own conduct, Defendants mooted their motion to compel arbitration and prolonged resolution of this matter. At this stage in this litigation, given the substantial resources expended by the Court and both parties, the Court would be remiss to offer Defendants a second bite at the proverbial apple. Accordingly, Defendants' motion to compel arbitration is denied.

### C. Motion for Summary Judgment

The Court next turns to Plaintiff's motion for summary judgment. Mr. Partridge seeks summary judgment on three of his claims: (1) breach of contract, (2) violation of District of Columbia statutory wage laws, and (3) his request for a judgment declaring the non-competition clause in the First Agreement invalid. As set forth below, the Court grants Mr. Partridge's motion with respect to Count One against LMT, but otherwise denies it.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Liberty Lobby*, 477 U.S. at 248). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 380; *Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895.

The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1). In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute." *United States v. Dynamic Visions, Inc.*, 220 F. Supp. 3d 16, 19–20 (D.D.C. 2016) (citing Fed. R. Civ. P. 56(c)(1)).

In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-movant, *see Liberty Lobby*, 477 U.S. at 255. Nevertheless, conclusory assertions offered

without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2). The court must, however, "always determine for itself whether the record and any undisputed material facts justify granting summary judgment." *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) (quoting *Grimes v. District of Columbia*, 794 F.3d 83, 97 (D.C. Cir. 2015) (Griffith, J., concurring)). That is, "[o]nce the court has determined the set of facts—both those it has chosen to consider undisputed for want of a proper response or reply and any that cannot be genuinely disputed despite a procedurally proper response or reply—it must determine the legal consequences of these facts and permissible inferences from them." *Winston & Strawn, LLP*, 843 F.3d at 508 (quoting Fed. R. Civ. P. 56 Advisory Committee's Note to 2010 Amendment).

### 1. Plaintiff's Motion for Summary Judgment is Not Premature

Before turning to the merits of Plaintiff's motion for summary judgment, the Court will address Defendants' contention that the motion is premature because the parties have not yet engaged in discovery. *See* Defs.' Resp. to Pl.'s Mot. for Summ. J. at 8–9, ECF No. 18. While summary judgment is often inappropriate when parties have not yet conducted discovery, *see First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988), this is not always true and a party cannot oppose summary judgment by simply declaring that it wishes to conduct further discovery. Rather, under Federal Civil Rule 56(d), a party opposing summary judgment must "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The D.C. Circuit has established "three

criteria that the affidavit must satisfy: (1) 'It must outline the particular facts the non-movant intends to discover and describe why those facts are necessary to the litigation'; (2) 'it must explain why the non-movant could not produce the facts in opposition to the motion for summary judgment'; and (3) 'it must show the information is in fact discoverable.'" *U.S. ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 26 (D.C. Cir. 2014) (internal citations and brackets omitted) (quoting *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99–100 (D.C. Cir. 2012)). "The rule was not created to act as a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious." *Greenberg v. FDA*, 803 F.2d 1213, 1223 (D.C. Cir. 1986) (internal quotation marks omitted). Accordingly, district courts should deny a request for a continuance in order to obtain discovery when "the discovery sought appears irrelevant, or if discovery would be wholly speculative." *Id.* at 1224.

Defendants have submitted neither affidavits nor declarations in support of their request that the Court delay consideration of Plaintiff's summary judgment motion. In any event, failure to file affidavits or declarations aside,[9] Defendants' request fails on the merits. In support of their request for delay or denial of Plaintiff's motion, Defendants assert that affidavits submitted along with Plaintiff's motion for summary judgment come from individuals "who may have a bias against the Defendants." Defs.' Resp. to Pl.'s Mot. for Summ. J. at 8. Defendants declare

---

[9] In this jurisdiction, such a failure does not automatically doom a request for additional discovery. *See First Chicago Int'l*, 836 F.2d at 1380 (holding that appellant's failure to file an affidavit specifically outlining the facts that it hoped to uncover with additional discovery did not preclude it from challenging the summary judgment order because other filings were sufficient to notify the district court of the need for further discovery). The D.C. Circuit has reasoned that a "more flexible approach" to the affidavit requirement is appropriate when other filings "serve[] as the functional equivalent of an affidavit." *Id.* at 1380. But given Defendants' sparse explanation for why the Court should permit additional discovery, this is not a case where other filings suffice.

that, through discovery, they hope to scrutinize the "motivation[s]" of these individuals. *Id*. at 8. Furthermore, they contend that other evidence offered by Plaintiff "does not necessarily show [that] LLC had a duty to pay Plaintiff, Arlett had a duty to play Plaintiff[,] or that LMT was in breach of its duty." *Id*. at 9. This request is far too vague to justify denying or deferring action on Plaintiff's motion for summary judgment. First, Defendants' contention about what sort of evidence discovery might produce is utterly speculative. Defendants have provided this Court with no reason to believe that discovery may produce statements that undermine the credibility of the affidavits Plaintiff has submitted. Second, Defendants have not made clear to this Court why the facts they intend to discover might be necessary to this litigation. For example, Defendants state only that they generally mistrust a declaration submitted by Jacquelyn Martin. *See* Defs.' Resp. to Pl.'s Mot. for Summ. J. at 8. But they fail to specifically deny any assertion made in that declaration.

Furthermore, it is readily apparent that Defendants are in a position to challenge many of the material factual allegations critical to this dispute. For example, Defendants have said nothing to dispute that at least some of them owe Mr. Partridge unpaid wages. Nor have they disputed the amount of unpaid wages owed. The Court struggles to imagine why Defendants would lack access to information that might enable them to show whether they have paid Mr. Partridge at all and, if so, how much they have paid him. Accordingly, it is not apparent to the Court how discovery might better enable Defendants to oppose Plaintiff's motion, when much of the information at issue in this case is already in their possession. As Defendants have not shown why they might need additional discovery, the Court has no reason to delay resolving the motion until after discovery is taken.

**2. Mr. Partridge is Entitled to Summary Judgment Against Defendant LMT for Its Breach of the First Agreement, But Genuine Issues of Material Fact Preclude Summary Judgment Against the Other Defendants**

Mr. Partridge moves for summary judgment on his breach of contract claims against all three defendants. Because the First Agreement unambiguously created a duty for LMT to pay Mr. Partridge and because LMT does not dispute that it breached that duty, the Court will enter judgment against LMT on this claim. However, as there are genuine issues of material fact concerning the obligations undertaken by Defendants LLC and Mr. Arlett, the Court will deny summary judgment as to them.

"To prevail on a clear of breach of contract,' under District of Columbia law, 'a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach.'" *Aspire Channel, LLC v. Penngood, LLC*, 139 F. Supp. 3d 382, 388 (D.D.C. 2015) (quoting *Brown v. Sessoms*, 774 F.3d 1016, 1024 (D.C. Cir. 2014)). The District of Columbia adheres to the objective law of contract under which "the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered the contract" unless the Court cannot gather the clear and definite meaning of the agreement. *Potomac Elec. Power Co. v. Mirant Corp.*, 251 F. Supp. 2d 144, 148 (D.D.C. 2003) (quoting *Marra v. Papandreou*, 59 F. Supp. 2d 65, 76 (D.D.C. 1999)). "In deciding whether contract language is susceptible of a clear meaning, the court conducts a reasonableness inquiry." *Id*. at 149. It "looks beyond the language itself and determines what a reasonable person in the position of the parties would have thought the disputed language meant." *Id*.

If a contract is unambiguous, courts can and should interpret it as a matter of law. *See Horn & Hardart Co. v. Nat'l R.R. Passenger Corp.*, 793 F.2d 356, 359 (D.C. Cir. 1986). If a contract is ambiguous—that is, if "provisions in controversy are, reasonably or fairly susceptible

of different constructions or interpretations," *Wharf, Inc. v. District of Columbia*, 133 F. Supp. 3d 29, 40–41 (D.D.C. 2015) (quoting *Joyner v. Estate of Johnson*, 36 A.3d 851, 856 (D.C. 2012))—summary judgment may still be appropriate "so long as there is no evidence that would support a conflicting interpretation of the agreement." *Am. First Inv. Corp. v. Goland*, 925 F.2d 1518, 1522 (D.C. Cir. 1991). But, "[a] court generally will not grant summary judgment where a contract is ambiguous because its interpretation inevitably would 'depend[] on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence.'" *Potomac Elec. Power Co.*, 251 F. Supp. 2d at 149 (quoting *Holland v. Hannan*, 456 A.2d 807, 815 (D.C. 1983)).

### i. First Agreement

Mr. Partridge contends that all three Defendants are jointly and severally liable for breaching the First Agreement. *See* Pl.'s MSJ, ECF No. 10. In support of his claim, he supplies the agreement he entered with Defendant LMT. *See* Pl.'s MSJ, Ex. 2, ECF No. 10-4; Pl.'s Statement of Undisputed Material Facts, ECF No. 10-1 ¶ II.A. He contends that the First Agreement required LMT to pay him $11,000 per month from December 2015 through March 31, 2016 and $11,500 per month from April 2016 through November 2016. *See* Pl.'s SMF ¶ II.B, ECF No. 10-1. Mr. Partridge asserts that, though he performed all duties required of him by the First Agreement, LMT breached the Agreement by failing to pay him. *Id.* ¶¶ II.C–D. Mr. Partridge also argues that Defendant Arlett is liable under the First Agreement because he had control over payment of wages under the Agreement. *Id.* ¶ II.K.

Mr. Partridge has shown that a valid contract existed between him and Defendant LMT. The First Agreement plainly states that Defendant LMT had a duty to pay Mr. Partridge $11,000 per month for services that he would render from December 2015 through March 2016 and

$11,500 per month for services that he would render from April 2016 through November 2016. *See* Pl.'s MSJ, Ex. 2 at 4. Mr. Partridge has also supported his claim that Defendant LMT breached that duty by failing to pay him despite his performance. *See* Pl.'s MSJ, Exs. 2, 17–19, 23. Indeed, Defendant LMT does not dispute that Mr. Partridge performed as required by the agreement or that it failed to pay Mr. Partridge according to the agreement. *See* Defs.' Resp. to Pl.'s Mot. for Summ. J. at 2. Furthermore, Mr. Partridge has shown that he sustained damages as a result of the breach, in the form of $92,432 in unpaid wages.[10] Thus, the Court finds that there is no genuine dispute as to any material fact concerning plaintiff's claim that LMT breached the First Agreement and that Mr. Partridge is entitled to summary judgment.

However, neither LLC nor Mr. Arlett were parties to the First Agreement. Mr. Partridge asserts that they are nonetheless liable for breach of that agreement because they are alter egos of LMT. *See* Pl.'s MSJ at 21–23. He provides insufficient support, however, to justify summary judgment in his favor. Viewing the record in the light most favorable to the nonmovants, genuine issues of material fact remain regarding whether Mr. Arlett and LLC are alter egos of LMT such that they can be held liable for LMT's breach of contract. *See TAC-Critical Sys., Inc. v. Integrated Facility Sys., Inc.*, 808 F. Supp. 2d 60 (D.D.C. 2011). Indeed, Mr. Partridge's own argument that LMT alone failed to join a motion to dismiss submitted by the other Defendants seems to undermine his argument that the three parties are essentially one and the same. The Court denies Plaintiff's motion to the extent that it seeks judgment against LLC and Mr. Arlett for obligations under the First Agreement.

---

[10] Mr. Partridge's complaint alleges that Defendant LMT owed him a total of $137,409 under the First Agreement, but it explains that LMT has already paid him $44,977 of the amount owed under the agreement. Compl. ¶ 23; *see also* Compl., Ex. A at 4 (specifying payments owed for Mr. Partridge's services).

### ii. Second Agreement

Mr. Partridge contends that even if LLC and Mr. Arlett are not liable for breach of the First Agreement, they are liable for breach of the Second Agreement in which they offered Mr. Partridge "iron clad assurance[s]" that future payments would be made in a timely manner, consistent with the terms of the First Agreement. *See* Pl.'s Statement of Undisputed Material Facts ¶ II.E. Defendants dispute whether the Second Agreement constitutes a separate enforceable contract. *See* Defs.' Resp. to Pl.'s Mot. Summ. J. at 9–10. Both parties present reasonable arguments to support their respective understandings of the contractual provision. The Court cannot say that the terms of the Second Agreement are unambiguous, and in view of the ambiguity, the Court will deny Plaintiff's motion and permit the parties to submit extrinsic evidence to support their interpretations.

### 3. Summary Judgment on Count Two is Denied

Mr. Partridge also moves for summary judgment on Count Two, which asserts that Defendants violated the DCWPCL, D.C. Code §§ 32–1301 *et seq.*, by failing to pay Plaintiff wages in accordance with the Agreements. *See* Pl.'s MSJ at 22. Defendants scarcely engage with Plaintiff's argument that they are liable for violating District of Columbia statutory law. As best the Court can tell, however, they dispute that Defendants LMT and Mr. Arlett are District of Columbia employers under the Law. *See* Defs.' Resp. to Pl.'s Mot. Summ. J. at 3, 11–12 (noting that LMT is registered under the jurisdiction of Antigua and Barbados and disputing whether Mr. Arlett is an employer of Mr. Partridge). Because the only unambiguous wage agreement before the Court is the First Agreement, which Mr. Partridge entered with LMT, and because it is not clear whether LMT is a District of Columbia employer under the DCWPCL, the Court denies Plaintiff's motion for summary judgment on Count Two.

The DCWPCL applies to "every individual, partnership, firm, general contractor, subcontractor, association, corporation, the legal representative of a deceased individual, or the receiver, trustee, or successor of an individual, firm, partnership, general contractor, subcontractor, association, or corporation, *employing any person in the District of Columbia*." D.C. Code § 32–1301. The Law dictates how and when employers in the District must pay their employees and permits employees to pursue civil actions against employers for violations. *See* D.C. Code § 32–1302. Mr. Partridge contends that the DCWPCL applies to Mr. Arlett, LMT, and LLC. According to Mr. Partridge, all three defendants employed him in the District of Columbia under the Law because the Defendants are each headquartered in the District of Columbia and Mr. Arlett's and LMT's communications concerning the First Agreement were transmitted to Plaintiff from the District of Columbia. *See* Pl.'s MSJ at 24. He also cites a handful of cases, which he contends counsel in favor of an interpretation of the DCWPCL that reaches employers outside of the District of Columbia. Pl.'s MSJ at 24 n.18 (citing *Lincoln-Odumu v. Med. Faculty Assoc., Inc.*, 2016 WL 6427645 (D.D.C. July 8, 2016)).

As the Court explained above, the First Agreement is clearly and definitely an employment agreement promising certain wages to Mr. Partridge and obligating Defendant LMT to pay those wages. LMT employed Mr. Arlett. The Second Agreement, however, does not unambiguously outline any obligation for any defendant. And while Mr. Partridge has supplied enough evidence to show that LMT employed him, issues of fact remain regarding whether LLC or Mr. Arlett are alter egos of LMT. Therefore, issues remain regarding whether LLC and Mr. Arlett are Mr. Partridge's employers under the First Agreement. In light of the ambiguity, the Court will only consider whether LMT is Mr. Partridge's employer under the DCWPCL.

On this record, the Court cannot say that Defendant LMT was Mr. Partridge's employer under the DCWPCL because Mr. Partridge has not demonstrated that LMT employed him in the District of Columbia. Mr. Partridge asserts that LMT is headquartered in the District of Columbia, but LMT appears to dispute that fact. *See* Defs.' Resp. to Pl.'s Mot. Summ. J. at 3 (asserting that "LMT is an Antigua & Barbados Company"). Mr. Partridge also asserts that communications sent from LMT were transmitted from the District of Columbia. Even assuming that such a tenuous connection to the District of Columbia might suffice to say that an entity employed someone "in the District of Columbia," Mr. Partridge, who performed his duties in Tbilisi, Georgia, supplies no evidence to support his claim. Because issues of material fact remain regarding whether any defendant employed Mr. Partridge in the District of Columbia, this Court denies Mr. Partridge's motion with respect to Count Two.

### 4. Summary Judgment on Count Five is Denied

Mr. Partridge argues that he is entitled to a declaration that he is not bound by restrictions on his prospective employment found in the First Agreement. Specifically, he argues that the Court should release him from any restrictions on his employment because LMT breached the First Agreement and, therefore, his performance is excused. *See* Pl.'s MSJ at 28. Mr. Partridge relies upon only one case, which interprets and applies Massachusetts law, to support his argument. Pl.'s MSJ at 28 (citing *L.G. Balfour Co. v. McGinnis*, 759 F. Supp. 840, 845 (D.D.C. 1991)). As Massachusetts law does not apply to the interpretation of any agreement in this case and Mr. Partridge has not demonstrated that he is entitled to judgment as a matter of law under applicable law, his motion is denied.

## C. Defendants' Counsel's Motion to Withdraw is Granted

Finally, the Court considers whether Defendants' counsel should be permitted to withdraw from this case. In support of his request, counsel cites his "deteriorating relationship" with his clients, his clients' purported failure to pay for legal services he has provided, and counsel's belief that withdrawal can be accomplished without prejudice to the parties. *See* Counsel Mot. to Withdraw at 1–2, ECF No. 27; Defs.' Counsel Reply to Pl.'s Resp. to Mot. to Withdraw at 2–3, ECF No. 32. Per Mr. Arlett's e-mail communication to the Court on September 19, 2017, Defendants do not oppose counsel's motion. *See* Arlett Letter, ECF No. 41. On the other hand, Plaintiff asks the Court to deny the motion, arguing that he will be prejudiced if Defendants' counsel is permitted to withdraw "at this time."[11] Pl.'s Opp'n to Defs.' Counsel's Mot. to Withdraw at 1.

Local Rule 83.6(c) bars an attorney from withdrawing except by court order when a trial date has been set, a party's written consent has not been obtained, or the party is not represented by another attorney. Local Civ. R. 83.6(c). The present motion to withdraw falls within the ambit of Local Rule 83.6(c) because no successor counsel has appeared to represent Defendants. A court has discretion to grant or deny an attorney's motion to withdraw. *See Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC*, 219 F. Supp. 3d 155, 158 (D.D.C. 2016). Generally, a court will deny a motion if "withdrawal would unduly delay trial of the case"—a factor inapplicable here because no trial date has been set—or if withdrawal would "be unfairly prejudicial to any party, or otherwise not be in the interest of justice." Local Civ. R. 83.6(d). Courts consider, among other things and as relevant, "the length of time the case and dispositive motions have been pending, the time it would take for the unrepresented party to search for and secure new

---

[11] Plaintiff filed his opposition on July 12, 2017.

legal representation, and that degree of financial burden that counsel would suffer if the court required him to remain in the case." *Laster v. District of Columbia*, 460 F. Supp. 2d 111, 113 (D.D.C. 2006).

Three primary factors militate in favor of permitting counsel to withdraw at this time. First, the Court takes note that, according to counsel, Defendants are in arrears on payments due for legal services already provided in this case. This Court recognizes that "an attorney should not be in a position where he or she has not been paid, and yet must continue to work for the client at his or her own expense." *Honda Power Equip. Mfg., Inc. v. Woodhouse*, 219 F.R.D. 2, 6 (D.D.C. 2003); *see also Barton v. District of Columbia*, 209 F.R.D. 274, 277 (D.D.C. 2002) ("It simply expects too much of counsel to expend the additional energy necessary to go to trial, and to front the necessary expenses, without any real assurance that he will be paid for any of it, especially where he already is owed a substantial sum." (quoting *Lieberman v. Polytop Corp.*, 2 Fed. App'x 37, 39–40 (1st Cir. 2001))). Second, the Court will take into account the deteriorated relationship between counsel and Defendants. *See, e.g.*, *Sabre Int'l Security*, 219 F. Supp. 3d at 158–59; *Honda Power Equip. Mfg., Inc.*, 219 F.R.D. at 6 (reasoning that interests of justice do not favor ordering counsel to continue representing a client who "does not respond to . . . attempts to contact him and has not paid his bills"). The record reveals little about when and why the attorney-client relationship broke down, and neither counsel nor Defendants express a view about whether any conflicts might be reconcilable. But it stands to reason that, should current counsel remain in this case, there may be difficulties ahead for both counsel and Defendants if they are unable to communicate and to agree on how to proceed in this litigation. Third, more than three months have passed since Defendants represented that they needed thirty days to secure new counsel. Despite having had plenty of time, no new counsel has appeared on

their behalf. The Court cannot permit Defendants to bring this litigation to a standstill by keeping current counsel in limbo. Accordingly, the Court grants Defendants' counsel's motion to withdraw.

While allowing Defendants' counsel to withdraw resolves one problem, it raises another. It is well-established that "[a] corporation cannot represent itself and cannot appear *pro se*. It must be represented by counsel." *Alexian Bros. Med. Ctr. v. Sebelius*, 63 F. Supp. 3d 105, 108 (D.D.C. 2014) (quoting *Lennon v. McClory*, 3 F. Supp. 2d 1461, 1462 n.1 (D.D.C. 1998)). In addition, this Court's Local Rules do not permit appointment of counsel to corporations in civil matters. *See* Local Civ. R. 83.11(b)(3) (limiting appointment of counsel to *pro se* litigants, a status denied to corporations). Accordingly, now that counsel has withdrawn, although Mr. Arlett may proceed *pro se*, LLC and LMT cannot. Defendants LLC and LMT must immediately seek new counsel—if counsel has not already been retained—and have new counsel appear in this matter within 30 days. If no counsel appears by such date, Plaintiff may seek appropriate relief.

## IV. CONCLUSION

The Court denies Plaintiff's motion to strike and denies Defendants' motion to dismiss and to compel arbitration. The Court grants Plaintiff's motion for summary judgment against Defendant LMT on the breach of contract count, but otherwise denies Plaintiff's motion. The Court also grants Defendants' counsel's motion to withdraw. The parties, including Defendant Mr. Arlett, if proceeding *pro se*, must appear for a status hearing on **January 31, 2018 at 11:00 AM** in Courtroom 14. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: December 29, 2017                    RUDOLPH CONTRERAS
                                            United States District Judge